Judge Rya Zobel
In c/o Lisa Urso
U.S. Courthouse
1 Courthouse Way
Suite 2300
Boston, MA 02210


March 7, 2005

Dear Judge Zobel:

I am requesting that you allow me more time to retain new counsel to represent me in a case that you
are presiding over: Civil Action No. 04-1 0460 RWZ.

The case is Frank Quaglia (Plaintiff) v. Bravo Networks; National Broadcast Company, Inc., d.b.a.
NBC; Rainbow Programming Holdings, Inc.; and DOES 1-10 (Defendants).

Also, I am requesting that you order the defendants' attorneys, Daniel Kummer and Barry Slotnik, to
provide me discovery items* that they have refused to provide since July 2004. Such information as
the following selected examples is critical for me to have to retain new counsel on a contingency basis:

- All statements and analyses for all profits and losses for *The It Factor* television series
  from 2000 to the present.
- All documents relating to net profits for *The It Factor*, including books, ledgers, and
  quarterly and annual financials from 2000 to the present.
- All internal, external, and certified audits and associated work papers for *The It Factor*
  from 2000 to the present.

* See Plaintiff's First Request For Production of Documents to Bravo Networks: #s 5, 6, 13, 18, 31, 32
and Plaintiff's First Set of Interrogatories to Bravo Networks: #s 18, 19, 20, 21, 22 for specifics.

Similar Document Requests and Interrogatories were sent to NBC and Rainbow Programming
Holdings, Inc., but none of the defendants has produced the documentation.

Please contact me directly with any questions or concerns you may have. Thank you.

Sincerely,

*[signature: Frank Quaglia]*

Frank Quaglia

*[handwritten note:]* Plaintiff shall obtain new counsel by April 1, 2005
and counsel shall file an appearance on or before that date.
The request to compel discovery is denied pending the appearance
of new counsel.

*[signature]* Ryan Zobel    3/11/05

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FRANK QUAGLIA,

    Plaintiff,

    -against-

BRAVO NETWORKS, NATIONAL
BROADCASTING COMPANY, INC., doing :
business as NBC; RAINBOW
PROGRAMMING HOLDINGS, INC., and :
DOES 1-10,
    Defendants

Civil Action No. 04-1 0460 RWZ

**PLAINTIFF'S FIRST REQUEST
FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT
BRAVO NETWORKS**

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure, Plaintiff Frank Quaglia, by and through his attorneys, hereby requests that Defendant

Bravo Company (sued herein as Bravo Networks) to produce for inspection and copying at the

office of Chris Winton Henderson, 57 Wharf Street, Suite 3A, Salem, MA 01970, within thirty

(30) days from the date hereof, the documents and things in its possession, custody or control

which are described below.

## INSTRUCTIONS AND DEFINITIONS

1.    The definitions and instructions set forth in Rules 26(b)(5) and 34 of the

Federal Rules of Civil Procedure are incorporated herein by reference.

2.    In accordance with Fed. R. Civ. P. 34(b), all documents produced by Bravo in

response to this Request for Production shall be produced as they are maintained in the usual

course of Bravo's business or shall be organized and designated so as to correspond to the

requests to which the documents are responsive.

3. Where a claim of privilege is asserted in objecting to any item of this Request, the requested documents should be produced, except that it is not necessary to produce the portion of the documents as to which the privilege is claimed. However, where privilege is claimed, Defendant shall produce a privilege log setting forth (a) the date, author and subject matter of the document; (b) the name and title of each person who prepared, received, reviewed, or has or had custody, possession, or control of the document; (c) the identity of any attachments to the document; and (d) the nature of the privilege being claimed or the other ground for withholding the document.

4. If any responsive document has been, but no longer is, in the possession, custody or control of Defendant, Defendant shall identify the document by listing all of the following information: (a) the date of the document; (b) a description of the subject matter of the document; and (c) the name or names and addresses of each person who prepared, received, reviewed or either has or had possession, custody, or control of the document.

5. This Request for Production seeks documents Bravo has not produced in connection with his initial disclosures pursuant to Fed. R. Civ. P. 26.

6. This Request for Production is continuing, and any document obtained subsequent to production which would have been produced had it been available or its existence known at the time or production is to be supplied forthwith, to the extent permitted by Fed. R. Civ. P. 26(e).

7. "Plaintiff" or "Frank Quaglia" means plaintiff Frank Quaglia and includes his agents, employees, representatives and all other persons or entities acting or purporting to act on his behalf.

8.     "Bravo," "Defendant," "your," or "you" means Bravo Company (sued herein as "Bravo Networks"), and includes its present and former officers, directors, agents, employees and representatives, its subsidiaries, parents, divisions, affiliates predecessors-in-interest, successors and all other persons or entities acting or purporting to act on behalf of the foregoing.

9.     "NBC" means defendant National Broadcasting Company, Inc., and includes its present and former officers, directors, agents, employees and representatives, its subsidiaries, parents, divisions, affiliates predecessors-in-interest, successors and all other persons or entities acting or purporting to act on behalf of the foregoing.

10.    "Rainbow" means defendant Rainbow Media Holdings LLC (sued herein as Rainbow Programming Holdings, Inc.) and includes its present and former officers, directors, agents, employees and representatives, its subsidiaries, parents, divisions, affiliates predecessors-in-interest, successors and all other persons or entities acting or purporting to act on behalf of the foregoing.

11.    "Defendants" means Rainbow, NBC and Bravo, either collectively or individually.

12.    *"The Ultimate Audition"* means the film referenced in the Complaint and all versions thereof.

13.    *"The It Factor"* means the series broadcasted on Bravo and includes all episodes thereof.

14.    "Complaint" means the complaint filed in this action.

15.    "Relating to" means concerning, evidencing, describing, constituting,

mentioning, referring to, relating to, pertaining to, or discussing.

16.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all information that might otherwise be construed as being outside its scope.

17.    The term "any" shall mean any and all.

18.    The terms "all" and "each" shall be construed as all, each, any, and every.

19.    The use of singular includes the plural and vice versa.

20.    "Communication" means any written, oral or mechanical transmittal of information (in the form of facts, ideas, inquiries or otherwise) including, but not limited to, correspondence, memoranda, notes,' telexes, telephone conversations, e-mail, computerized mail,chat rooms, online forums, online bulletin boards, in-person meetings, and any written documents relating to any such communications.

21.    "Document" or "Documents" has the broadest possible meaning pursuant to the Federal Rules of Evidence, including, but not limited to, the original and all drafts of all written or graphic matter, however produced or reproduced, whether or not sent or received, and all copies thereof that are different in any way from the original, including, without limitation, correspondence, memoranda, notes, e-mails, spreadsheets, opinions, compilations, chronicles, minutes, agendas, contracts, agreements, reports, summaries, inter-office and intra-office communications, notations of any sort of conversations, diaries, appointment books or calendars, teletypes, telefax, thermafax, confirmations, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed) and all drafts, alterations, modifications, changes and amendments of any of the foregoing,

and all graphic or manual records or representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures, and electronic, mechanical or electric records or representations of any kind including, without limitation, tapes, cassettes, disks, magnetic media and recordings.

22.    If, for any reason other than a claim of privilege, you refuse to respond to any Document Request herein, state the grounds upon which such refusal is based with sufficient particularity to permit a determination of the propriety of such refusal.

23.    If, in responding to these Document Requests, you claim that any Document Request, or a definition or instruction applicable thereto, is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as a part of the response the language you claim is ambiguous and the interpretation you have used to respond to the individual Document Request.

24.    Each paragraph herein shall be construed independently and not with reference to any other paragraph for the purpose of limitation.

26.    Each of the foregoing definitions and instructions is hereby incorporated by reference into, and shall be deemed a part of, each and every other definition and instruction contained herein as well as each specific Document Request set forth below.

27.    Plaintiff reserves the right to serve additional Document Requests upon Bravo

### DOCUMENT REQUESTS

1.    All documents relating to the creation, filming, production and editing of *The It Factor*, including scripts and production notes and any communications with creative and/or technical and production personnel.

2.        All producer, writer, and production company agreements for *The It Factor.*

3.        All documents regarding distribution agreements for *The It Factor.*

4.        All documents exchanged between or reflecting communications between Bravo and all persons who appeared in or received credit as producers, writers, and creators for *The It Factor,* including all contracts and assignments of copyright.

5.        All statements and analysis for all profits and losses for *The It Factor.*

6.        All documents relating to net profits for *The It Factor,* including books and ledgers, and quarterly and annual financials.

7.        All documents indicating monies paid to Zanzibar and any executives thereat.

8.        All advertisements Bravo placed or that appeared in any newspaper, magazine, periodical or on any website relating to *The It Factor,* including any advertisements soliciting actors to audition for the series that became *The It Factor.*

9.        All domestic or foreign promotional materials, including all promotional video clips for *The It Factor.*

10.      All documents reflecting communications between any Defendant and Plaintiff regarding *The Ultimate Audition,* including notes regarding such communications, and any evaluations, responses, and/or reactions to *The Ultimate Audition.*

11.      All documents reflecting communications between Bravo and any person other than Defendants regarding *The It Factor,* including notes regarding such communications.

12.      All documents relating to any communications between Bravo and any other Defendant regarding *The It Factor,* including notes regarding such communications.

13.      All documents reflecting any royalties, accountings, or payments Bravo has

received in connection with *The It Factor*.

14.     Copies of all copyright registration certificates and applications for *The It Factor*, and copies of all communications between Bravo and the United States Copyright Office relating to such registration certificates and applications.

15.     Video copies of all versions and episodes of *The It Factor*, chronologically numbered and dated.

16.     Video copies of all raw or unedited footage that was shot to make the 2002 New York and the 2003 Los Angeles series premiers of *The It Factor*.

17.     Programming schedule for all episodes, including all reruns of *The It Factor* from January 2002 to the present, aired on Bravo, its affiliates, and any other broadcasting entities, domestic and foreign.

18.     Copies of all internal, external, and certified audits of Bravo, including signed final copies of the audits and any work papers related to the production, advertising, airing, distributing, and merchandising of, and any other commercial enterprise associated with *The It Factor*, from January 2000 to the present.

19.     Copies of Bravo's employment records and contracts as independent contractors or otherwise for and with David Clair, Lauren Freidland, and Nicole Torre from 1998 to present and current addresses and telephone numbers for those individuals.

20.     Copies of Bravo's employment records and contracts for and with all of the cast members who appeared in New York and Los Angeles premiers of *The It Factor* and current addresses and telephone numbers for those individuals, separated by east and west coasts.

21.     Copies of Bravo's employment records and contracts for and with all of the crew members, including the directors, who worked on the New York and Los Angeles premiers of *The It Factor* and current addresses and telephone numbers for those individuals, separated by east and west coasts.

22.     Copies of all written proposals Zanzibar presented to Bravo, or Rainbow, or affiliates by David Clair, Lauren Friedland, Nicole Torre, and any agent or other facilitator for the purpose of making *The It Factor,* and all documents regarding responses and reactions thereto.

23.     Video copies of all footage, including any video trailers, Zanzibar presented to Bravo or Rainbow or affiliates by David Clair, Lauren Friedland, Nicole Torre, and any agent or other facilitator for the purpose of making *The It Factor.*

24.     All documents pertaining to any other Bravo original productions since 1998.

25.     All documents regarding any determinations of whether or not to produce *The It Factor,* and all documents regarding all responses and reactions thereto.

26.     All documents pertaining to all creative pitches for *The It Factor.*

27.     All documents pertaining to all creative pitches for *The Ultimate Audition.*

28.     All documents indicating any work David Clair has performed for any Bravo production, directly or indirectly, and/or as an independent contractor, including the dates when, locations where, and times when such work was performed.

29.     All documents pertaining to budgets for all episodes of *The It Factor.*

30.     All documents showing costs of production for *The It Factor.*

31.     All documents showing the value of the show, *The It Factor.*

32.     All documents showing the ratings for each episode of *The It Factor.*

33.     All documents, other than those previously produced or produced in response to the foregoing requests, upon which Bravo intends to rely in connection with this action.


Dated: July 13, 2004

                               NEVILLE L. JOHNSON (admitted pro hac vice)
DOUGLAS L. JOHNSON (admitted pro hac vice)
**JOHNSON & RISHWAIN LLP**
12121 Wilshire Boulevard,
Suite 1201
Los Angeles, California 90025-1175
(310) 826-2410
(310) 826-5450 (Fax)


CHRIS WINTON HENDERSON
(B.B.O. No. 655321)
57 Wharf Street
Suite No. 3A
Salem, Massachusetts 01970
(978) 741-4646
(978) 740-8880 (fax)

Attorneys for Plaintiff,
FRANK QUAGLIA

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FRANK QUAGLIA,

    Plaintiff,

  -against-

BRAVO NETWORKS, NATIONAL
BROADCASTING COMPANY, INC., doing :
business as NBC; RAINBOW
PROGRAMMING HOLDINGS, INC., and :
DOES 1-10,
    Defendants

Civil Action No. 04-1 0460 RWZ

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT BRAVO NETWORKS**

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Frank Quaglia by his undersigned counsel, hereby requests that Defendant Bravo Company (sued herein as Bravo Networks) ("Bravo"), provide answers under oath to the following Interrogatories within thirty (30) days from the date hereof.

## INSTRUCTIONS AND DEFINITIONS

1.    In answering these Interrogatories, you are requested to furnish all information which is available to you, including information in the possession of your attorneys, agents, representatives or anyone acting in cooperation or concert with you, including any experts which have been consulted or retained. In answering these Interrogatories, you must furnish all available information.

2.    These Interrogatories are to be regarded as continuing in nature. You are

therefore requested to provide, by way of supplementary answers or amendments thereto, such additional information as you, or any person on your behalf, may hereinafter obtain which will augment or modify the answers now given.

3.      You are also requested to identify separately for each interrogatory all persons and documents consulted by you in preparing your answer thereto.

4.      "Plaintiff" or "Frank Quaglia" means plaintiff Frank Quaglia and includes his agents, employees, representatives and all other persons or entities acting or purporting to act on his behalf.

5.      "Bravo," "Defendant," "your," or "you" means Defendant Bravo Company (sued herein as Bravo Networks), and includes its present and former officers, directors, agents, employees and representatives, its subsidiaries, parents, divisions, affiliates predecessors-in-interest, successors and all other persons or entities acting or purporting to act on behalf of the foregoing.

6.      "NBC" means defendant National Broadcasting Company, Inc., and includes its present and former officers, directors, agents, employees and representatives, its subsidiaries, parents, divisions, affiliates predecessors-in-interest, successors and all other persons or entities acting or purporting to act on behalf of the foregoing.

7.      "Rainbow" means defendant Rainbow Media Holdings LLC (sued herein as Rainbow Programming Holdings, Inc.) and includes its present and former officers, directors, agents, employees and representatives, its subsidiaries, parents, divisions, affiliates predecessors-in-interest, successors and all other persons or entities acting or purporting to act on behalf of the foregoing.

8.    "Defendants" means Rainbow, NBC and Bravo, either collectively or individually.

9.    "The Ultimate Audition" means the film referenced in the Complaint and registered for copyright.

10.    "The It Factor" means the Bravo series that was broadcast between January 2002 and March 2003, and includes all episodes thereof.

11.    "Complaint" means the complaint filed in this action.

12.    "Relating to" means concerning, evidencing, describing, constituting, mentioning, referring to, relating to, pertaining to or discussing.

13.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all information that might otherwise be construed as being outside its scope.

14.    The term "any" shall mean any and all.

15.    The terms "all" and "each" shall be construed as all, each, any, and every.

16.    The use of singular includes the plural and vice versa.

17.    "Communication" means any written, oral or mechanical transmittal of information (in the form of facts, ideas, inquiries or otherwise) including, but not limited to, correspondence, memoranda, notes, telexes, telephone conversations, e-mail, computerized mail, chat rooms, online forums, online bulletin boards, in-person meetings, and any written documents relating to any such communications.

18.    "Document" or "Documents" has the broadest possible meaning pursuant to

the Federal Rules of Evidence, including, but not limited to, the original and all drafts of all written or graphic matter, however produced or reproduced, whether or not sent or received, and all copies thereof that are different in any way from the original, including, without limitation, correspondence, memoranda, notes, e-mails, spreadsheets, opinions, compilations, chronicles, minutes, agendas, contracts, agreements, reports, summaries, inter-office and intra-office communications, notations of any sort of conversations, diaries, appointment books or calendars, teletypes, telefax, thermafax, confirmations, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed) and all drafts, alterations, modifications, changes and amendments of any of the foregoing, and all graphic or manual records or representations of any kind, including, without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures, and electronic, mechanical or electric records or representations of any kind including, without limitation, tapes, cassettes, disks, magnetic media and recordings.

19.     "Identify (With Respect to Persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and phone numbers, and when referring to a natural person, additionally, the present or last known place of employment. Once a person had been identified in accordance with this subparagraph, only the name of that person need be listed in respect to subsequent discovery requesting the identification of that person.

20.     "Identify" (With Respect to Documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) the general subject matter; (iii) the date of the document; and (iv) author(s), addressee(s) and recipient(s).

21.     The terms "person" and "entity shall mean any and all natural persons, and any corporation, partnership, association, joint venture, firm or other business enterprise or legal entity, and any department, agency, office, bureau or division of the United States, state, local or federal government. In every definition and request incorporating the word "person" or "entity," the request should be read to include each and every relevant person and entity, without regard to whether the singular or plural version of the word "person" or "entity" is used.

22.     If you are unable to respond to any Interrogatory fully, supply the information that is available and explain why your response is incomplete, the efforts made to obtain the information and the source from which all responsive information may be obtained.

23.     If, for any reason other than a claim of privilege, you refuse to respond to any Interrogatory requested herein, state the grounds upon which such refusal is based with sufficient particularity to permit a determination of the propriety of such refusal.

24.     If, in answering these Interrogatories, you claim that any Interrogatory, or a definition or instruction applicable thereto, is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as a part of the response the language you claim is ambiguous and the interpretation you have used to respond to the individual Interrogatory.

25.     Each paragraph herein shall be construed independently and not with reference to any other paragraph for the purpose of limitation.

26.     Each of the foregoing definitions and instructions is hereby incorporated by reference into, and shall be deemed a part of, each and every other definition and instruction contained herein as well as each specific Interrogatory set forth below.

27.     Plaintiff reserves the right to serve additional Interrogatories upon Defendant.

## INTERROGATORIES

1.     State the names and addresses of each person who participated in the creation of *The It Factor.*

2.     For each such person identified in response to Interrogatory No. 1 above, describe in detail their role, participation, and activities relating to the creation of *The It Factor.*

3.     State the names and addresses of each person who participated in the production and editing of *The It Factor.*

4.     For each such person identified in response to Interrogatory No. 3 above, describe in detail their role, participation, and activities relating to the production and editing of *The It Factor.*

5.     For each episode of *The It Factor,* identify and describe in detail all the reasons why you believe *The It Factor* and *The Ultimate Audition* are not the same.

6.     State when and describe the circumstances under which Bravo first became aware of the production or potential production of *The It Factor.*

7.     Identify all persons who were pitched the show/project *The Ultimate Audition,* including the dates of such pitches, and all responses and reactions thereto.

8.     Identify all persons who pitched the show/project *The Ultimate Audition.*

9.     Identify all persons who were pitched the show/project that became *The It Factor,* including the dates of such pitches, and all responses and reactions thereto.

10.     Identify all persons who pitched the show/project that became *The It Factor.*

11.     State all of your communications with Plaintiff, including in such answers the parties, dates, and substance of any such communications.

12.     Describe in detail all of Bravo's activities in the creation and development of *The It Factor*, including in such response, date, time, and persons involved.

13.     Identify who owns the copyright in *The It Factor*.

14.     State all of the members of Bravo's program development team from January 1998 to the present, the list to indicate all names, including all name changes, job titles, responsibilities, and projects worked on.

15.     Identify all of the individuals at Bravo who worked in development with Laura Pierce from January 1998 to the present.

16.     Identify all of the individuals at Bravo who worked in development with Debbie DeMontreux from January 1998 to the present.

17.     Identify each person whom you expect to call as an expert witness to provide testimony, including in any hearing or trial, in this case, and, as to each expert so identified, state the subject matter on which such person is expected to testify, the substance of the facts and opinions to which the person is expected to testify, and a summary of the grounds for each opinion.

18.     State all of the calculations for net profits of *The It Factor*.

19.     State your determination of the value of the series, *The It Factor*, and how you calculated that determination.

20.     Identify all of the distributors to whom distribution rights to *The It Factor* were sold.

21.   State all of the revenues generated by or associated with the distribution of *The It Factor*, in reference to the list of distributors above.

22.   State all of the anticipated revenues of *The It Factor.*

23.   State all dates and show times when *The It Factor* was broadcast.

24.   For each of the episodes identified in interrogatory No. 23 above, state the estimated viewers per episode.

23.   State all anticipated future uses and showings for *The It Factor.*


Dated: July 13, 2004

                                  _____

NEVILLE L. JOHNSON (admitted pro hac vice)
DOUGLAS L. JOHNSON (admitted pro hac vice)
**JOHNSON & RISHWAIN LLP**
12121 Wilshire Boulevard,
Suite 1201
Los Angeles, California 90025-1175
(310) 826-2410
(310) 826-5450 (Fax)

CHRIS WINTON HENDERSON
(B.B.O. No. 655321)
57 Wharf Street
Suite No. 3A
Salem, Massachusetts 01970
(978) 741-4646
(978) 740-8880 (fax)

Attorneys for Plaintiff,
FRANK QUAGLIA