UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANK QUAGLIA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRAVO NETWORKS, NATIONAL )<br>BROADCASTING COMPANY, INC., )<br>doing business as NBC, RAINBOW )<br>PROGRAMMING HOLDINGS, INC. )<br>and DOES 1-10, )<br>)<br>Defendants. ) | Civil Action No. 0410460 GAO<br><br>**AFFIDAVIT OF**<br>**FRANCES BERWICK**<br>**IN OPPOSITION TO**<br>**PLAINTIFF'S MOTION**<br>**TO COMPEL** |

STATE OF NEW YORK    )
                     ):ss.
COUNTY OF NEW YORK   )

FRANCES BERWICK, being duly sworn, deposes and says:

1. I am employed by defendant Bravo Company ("Bravo"), incorrectly sued herein as Bravo Networks, as Senior Vice President, Programming and Production. I make this affidavit in that capacity, in opposition to Plaintiff's motion to compel production of documents and information, in order to provide certain facts relevant to that motion.

2. Between 1993 and 2004 Bravo was party to a programming licensing agreement with Chum Limited (which operates the Canadian programming service known as "Bravo!") that covered various Bravo programming assets, including, during the relevant period from 2002-04, *The It Factor* television series that is the subject of this action. However, under this licensing agreement Chum Limited paid an aggregate license fee for all programming licensed to it by Bravo based on a percentage of its gross

revenues, and no amount was ever separately broken out as relating to distribution rights for *The It Factor*. Accordingly, Bravo has no documents or information that would enable isolation of distribution revenue that is directly or specifically attributable to *The It Factor*.

3. *The It Factor* was produced for Bravo by a third party production company, Zanzibar Productions, which shot all the footage and delivered edited episodes to Bravo that were then further edited based on comments from Bravo programming personnel, including me. To my knowledge, Bravo has never had possession of the raw videotape footage shot by Zanzibar for any of the episodes of *The It Factor*.

4. NBC acquired Bravo from defendant Rainbow Media in December 2002. In connection with that acquisition, Bravo moved its offices from Jericho, New York to NBC's headquarters in Rockefeller Center. Prior to that move, my staff and I discarded a large quantity of files, including, to the best of my knowledge and belief, any files of former employees that were no longer needed for Bravo's ongoing operations in its new home. That file purge would, to the best of my knowledge and belief, have included any files left behind by Laura Pierce, a former employee of Bravo who reported to me and who left Bravo's employ in 2001, approximately one year before NBC's acquisition of Bravo. Ms. Pierce was responsible for reviewing submissions of potential "long form", non-series programming acquisitions and specials, and information concerning any such submissions that she reviewed and rejected in 2000 would not have had any ongoing usefulness to Bravo in late 2002.

5. Until Plaintiff commenced this lawsuit in 2004, I was unaware of Plaintiff's submission of his documentary film "The Ultimate Audition" to Bravo in 2000. To my knowledge, neither I nor anyone else at Bravo was ever notified prior to the filing of this

2

lawsuit of any claim that *The It Factor* somehow infringed on Plaintiff's film. During the discovery phase of this lawsuit, my staff and I worked closely with counsel for Bravo and NBC in searching for responsive documents, and have not to date located any of Ms. Pierce's files or records.

_____
Frances Berwick

Sworn to before me this
13th day of June 2005

_____
Notary Public

WILLIAM V. KNIGHT III
NOTARY PUBLIC, State of New York
No. 01KN5072292
Qualified in New York County
Commission Expires Jan. 27, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 6/14/05

_____