## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
----------------------------------------------------------X
FRANK QUAGLIA,                              :

                Plaintiff,                  :

         -against-                          :        Civil Action No. 04-10460 RWZ

BRAVO NETWORKS et al.,                      :

                Defendants.                 :
----------------------------------------------------------X
```

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Plaintiff's Opposition to Defendants' Joint Motion for Summary Judgment rests on merely a hypothetical transmission of his film from a Bravo secretary to two Bravo production executives, their hypothetical viewing of his film (despite unrebutted testimony to the contrary) and his rote insistence that his film, "The Ultimate Audition," and the premiere episode of Defendants' television series, "The It Factor," are substantially similar. However, the undisputed evidence belies Plaintiff's copyright infringement theory.

The uncontradicted record demonstrates that no one involved with "The It Factor" had heard of, much less viewed, Plaintiff's film prior to this action. Furthermore, Plaintiff fails to address Defendants' showing that there is no similarity between the protectible elements of the two works. Consequently, Rule 56 not only permits summary judgment, but requires it. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

### I.    A Pro Se Plaintiff Is Not Relieved of His Burden to Oppose a Motion for Summary Judgment with Specific Evidence.

On a motion for summary judgment, "[o]nce the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment

evidence of the existence of a genuine fact issue." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). *See* Defs.' Moving Br. at 5-7.

Plaintiff, as a pro se plaintiff, is not relieved of this burden. "While a pro se plaintiff's papers are entitled to be read liberally, even a pro se plaintiff must provide evidentiary support, rather than mere conclusory assertions, to overcome a motion for summary judgment." *Santiago v. WNYW TV Network*, No. 97 Civ. 4771, 1999 WL 179362, at *2 (S.D.N.Y. Mar. 31, 1999) (copy attached). *Accord Leer v. Murphy,* 844 F.2d 628, 631 (9th Cir. 1988).

**II.    Plaintiff Fails to Set Forth Specific Evidence Showing that There is a Genuine Issue for Trial on Substantial Similarity.**

In conclusory fashion, Plaintiff contends that his film, "The Ultimate Audition," and the premiere episode of Defendants' television series, "The It Factor," are substantially similar in (1) premise, (2) character types, (3) sequence of events, (4) themes and symbols, (5) text and dialogue, (6) settings, (7) pace, (8) mood, (9) music and (10) format. Pl.'s Opp. at 5. It may be irrelevant to Plaintiff, but cannot be to this Court, that many of these elements are simply not copyrightable and the others could not be found substantially similar by any reasonable jury.

Plaintiff's film is about a contrived audition for a fictitious film. The audition itself was the film, although unknown to the auditioning actors. "The It Factor," by contrast, tells the stories of twelve actors looking to establish themselves in "the business" and documents their friends, families and non-acting work environments. The actors go on real-life auditions and that, too, is documented. The fact that the producers of "The It Factor" chose to include in their first episode the uncontrived auditions for the series itself was merely an element, rather than the premise or plot, of the series. In a film or series about young, struggling actors, the idea of an audition and any physical similarities in the audition itself are unprotectible. *See* Defs.' Mov. Br. at 14-17 (citing cases).

Plaintiff attempts to confect an infringement scenario whereby DeMontreux, in Svengali-like fashion, corrupted Zanzibar to unwittingly effect a "big change in concept" purportedly stolen from Plaintiff's work. The record evidence on this point, however, directly undercuts Plaintiff's theory. DeMontreux did suggest a change in concept, which Zanzibar expressed in its

own fashion. *See* DeMontreux Decl. ¶¶ 9-10; DeMontreux Dep. at 61-62 (Slotnick Decl., Ex. W); Friedland Decl. ¶ 15; "The It Factor" Proposal (Friedland Decl., Ex. L). But that change, to focus *less* on the audition process and more on the actors' *day-to-day lives*, only made the two works *less* similar in concept and expression than they might otherwise have been.

Plaintiff likewise offers no support for his conclusory allegations of substantial similarity, which are unsupported by a single case or example of the similarities between the protectible elements of the works. Plaintiff makes a weak attempt to demonstrate substantial similarity based on the "unique premise" of his film – actors auditioning for a future movie project where the auditions constitute the film – and its "distinct character types." Pl.'s Opp. at 5. However, Plaintiff fails to acknowledge that, as a matter of law, the idea of actors auditioning for future roles is not protectible, nor are the characters and subplots that necessarily follow from this idea. *See* Defs.' Mov. Br. at 14-16. While Plaintiff contends that his film contains twelve "distinct character types," which are copied by "The It Factor," the distinctiveness of Plaintiff's characters goes no further than demographic and personality types. Plaintiff offers nothing to challenge the case law cited by Defendants, which holds that such character stereotypes are not entitled to copyright protection. *See id.* at 15-16.

Plaintiff makes absolutely no effort to refute Defendants' showing that the protectible elements of the works are not substantially similar. Defendants' Moving Brief demonstrates that the theme, setting, plot, sequence, pace and total concept and feel of "The Ultimate Audition" are entirely different from those of "The It Factor," the former being a one-day exercise in deception of actors, who are lured to Massachusetts in the belief that they are auditioning for a film already "contracted with an international distributor," and the latter being a documentary series aimed at showing the real "day in the life" of a New York City actor. In response, Plaintiff offers nothing but a citation to his Comparative Analysis and his bald assertion that these elements of the works are substantially similar. Pl.'s Opp. at 5. Plaintiff cannot raise a genuine issue of material fact as to the substantial similarity of the works based on such conclusory assertions. *See Cepero-*

3

*Rivera v. Fagundo*, 414 F.3d 124, 132 (1st Cir. 2005); *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 100-101 (2d Cir. 1997).

**III.    Plaintiff Fails to Identify Specific Evidence Establishing a Triable Issue on Access.**

Plaintiff has not established that anyone involved with "The It Factor" had access to Plaintiff's film. Plaintiff theorizes that "the department secretary," Mary Beseau, gave Plaintiff's film to Debbie DeMontreux and Frances Berwick. Pl.'s Opp. at 2. However, DeMontreux and Berwick have categorically denied seeing the film. DeMontreux Decl. ¶ 5; Berwick Dep. at 8, 32 (Slotnick Reply Decl., Ex. Z).

The evidence shows that Pierce gave Beseau Plaintiff's film to return the tape to him along with the rejection letter. *See* Pierce Dep. at 37, ll. 20-24 (Slotnick Decl., Ex. X); Apr. 11, 2000 Ltr. ("Dictated but not read) mb"), Compl. Ex. 4 (Slotnick Decl., Ex. F). Everything else asserted by Plaintiff is sheer speculation, denied by both DeMontreux and Berwick. DeMontreux Decl. ¶ 5; DeMontreux Reply Decl. ¶ 4, attached hereto; Berwick Dep. at 8, 32 (Slotnick Reply Decl., Ex. Z). Although Beseau provided secretarial coverage for Berwick, Berwick testified that they never discussed ideas for projects, as Beseau "primarily [was] somebody who answered phones and processed payments." Berwick Dep. at 40-41.

Plaintiff cannot establish a reasonable possibility of access based upon a "tort[u]ous chain of hypothetical transmittals." *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355-57 (C.D. Cal. 1984) (plaintiff cannot defeat summary judgment based on access where "there is little, if any, nexus between the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work, and where the defendant presents uncontroverted evidence negating transmission of the plaintiff's work"). Plaintiff's proof of access is based on bare corporate receipt of his film, which is insufficient as a matter of law to create a triable question of fact. *See* Defs.' Moving Br. at 11-12.

**IV.    Plaintiff Has Not Rebutted Defendants' Showing that his State Law Claims are Preempted and Meritless.**

Equally unavailing is Plaintiff's attempt to salvage his state law claims for breach of confidence and implied-in-fact contract based on his purported expectation that the persons to

4

whom he submitted his film would keep it confidential. Pl.'s Opp. at 6. Plaintiff's claims fail as a matter of law because, first, there is no evidence that Defendants copied or misappropriated Plaintiff's ideas; and second, because Plaintiff had shown his film to more than 100 people by the time he submitted it to Bravo and made that submission without any prior agreement of confidentiality. Defs.' Moving Br. at 23-24.

### CONCLUSION

For the reasons set forth herein and in Defendants' moving papers, Defendants respectfully request that the Court grant Defendants' joint motion for summary judgment dismissing the Complaint with prejudice in its entirety.

Dated: August 19, 2005

*Co-Counsel*:

Daniel M. Kummer (admitted *pro hac vice*)
**NBC UNIVERSAL, INC.**
30 Rockefeller Plaza, Rm. 1091E
New York, NY 10112
(212) 664-4017

Counsel for Bravo Company (sued as Bravo Networks) and NBC Universal, Inc. (formerly known as and sued as National Broadcasting Company, Inc.)

Barry I. Slotnick (Admitted *pro hac vice*)
Laura M. Vasey (Admitted *pro hac vice*)
**LOEB & LOEB LLP**
345 Park Avenue
New York, New York 10154
(212) 407-4000

Counsel for Rainbow Media Holdings LLC (sued as Rainbow Programming Holdings, Inc.)

Respectfully submitted,

**BRAVO COMPANY (sued as BRAVO NETWORK) and NBC UNIVERSAL, INC. (formerly known as and sued as NATIONAL BROADCASTING COMPANY, INC.), RAINBOW MEDIA HOLDINGS LLC (sued as RAINBOW PROGRAMMING HOLDINGS, INC.)**

By their attorneys,

Jonathan M. Albano, BBO #013850
Serena D. Madar, BBO # 654326
**BINGHAM MCCUTCHEN**
150 Federal Street
Boston, Massachusetts 02110
(617) 951-8000

Counsel for All Defendants

434849

5

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179362
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**C**
Not Reported in F.Supp.2d, 1999 WL 179362
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Reynaldo C. SANTIAGO, Plaintiff,
v.
WNYW TV NETWORK, Defendant.
**No. 97 CIV. 4771(RPP).**

March 31, 1999.

Reynaldo C. Santiago, Bayonne, NJ, for Plaintiff.
Squadron, Ellenoff, Plesent & Sheinfeld, LLP , New
York, By Dori Ann Hanswirth   and Andrew L.
Weinberg, Counsel for Defendant.

OPINION AND ORDER

PATTERSON , D.J.
*1 Defendant Fox Television Stations, Inc. (sued
herein as "WNYW TV Network") ("Fox") moves
pursuant to Rule 56 of the Federal Rules of Civil
Procedure for summary judgment in this action
alleging employment discrimination in violation of
Title VII of the Civil Rights Act of 1964 ("Title VII")
and the Americans with Disabilities Act of 1990 (the
"ADA"), as well as retaliation in response to
plaintiff's report of a possible fraud within the
company. For the reasons that follow, defendant's
motion for summary judgment is granted.

FACTUAL BACKGROUND

Plaintiff was employed from September 10, 1996
through November 21, 1996 as an assistant to the
manager of the Credit and Collection Department at
WNYW Fox-5, a television station owned and
operated by defendant, Fox. (Affidavit of Isis Suarez,
Manager of Credit and Collection Department at
WNYW Fox-5, dated Oct. 8, 1998 ("Suarez Aff.") ¶
1.) Upon being hired, plaintiff was informed that his
job functions would include: (1) totaling up daily
cash receipts and posting them to outstanding
invoices, accounts receivable and/or miscellaneous
cash; (2) forwarding that information to the Financial
Reporting Department so that the information could
be entered into Fox's computer system for preparation
of monthly reports, and (3) reporting and inquiring

into any discrepant accounts. (*Id.* ¶ 4 .) In addition,
plaintiff was responsible for some clerical jobs, such
as opening business mail. (*Id.*)

Defendant presents unrebutted evidence that plaintiff
was a poor performer throughout the time he was
employed by Fox, that he was tardy for work on a
regular basis, and that he handed in assignments late.
(Defendant's Memorandum of Law in Support of
Motion for Summary Judgment ("Defendant's Mem.
In Supp.") at 2-8; Suarez Aff. ¶ ¶ 5-7; Defendant's
Response dated Oct. 21, 1996 to Plaintiff's Request
for Change in Work Hours (attached as part of
Hanswirth Aff. Ex. D); Job Performance Memo
Dated Nov. 4, 1996 (attached as part of Hanswirth
Aff. Ex. D); *see also, e.g.,* Santiago Dep. at 264-66,
301-04, 309, 311-313, 315, 322-23.)

On October 30, 1996, plaintiff opened a personal
piece of mail addressed to his supervisor. (Suarez
Aff. ¶ 8.) The contents of that letter included a check
made out to the supervisor's brother and a note of
thanks from one of her friends thanking her brother
for getting some tickets. (*Id.*) Plaintiff sent this
information to a higher supervisor and requested the
matter be looked into. (Plaintiff's Affirmation in
Opposition to Defendant's Motion for Summary
Judgment ("Pl.'s Affirm.") at 5.) Plaintiff alleges that
after reporting this information, "defendants [sic]
deliberately and intentionally delayed and held onto
my work up to the last minute, thus forcing me to do
my work in such a hurried fashion and thereby
committing some mistakes." (*Id.* at 6.) Plaintiff states
that "the errors in [his] work were the result of a ploy
the dept. manager used to extract these errors from
the plaintiff. The ploy was the deliberate and
intentional giving of work very late." (Plaintiff's
Notice of Opposition to Defendant's Motion for
Summary Judgment (Pl.'s Notice of Opp.") at 2.)
Plaintiff states that Ms. Fuentes, Fox's Vice President
of Human Resources, repeatedly refused to conduct
such an investigation despite his repeated requests,
and that he "was terminated as a retaliatory act by the
company for questioning the authority of a credit
manager." (*Id.* at 2.) Indeed, the allegation that
plaintiff was terminated in response to his report of
possible fraud is described by plaintiff as "the central
focus of this case." (Pl.'s Affirm. at 5.)

DISCUSSION

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 2

A. *Standard for Granting Summary Judgment*

**\*2** Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, and the Court must view the facts in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party demonstrates a prima facie case of the absence of any genuine issue of material fact, the burden shifts to the nonmoving party, who cannot rest on mere allegations or denials, but must set forth specific facts showing that a reasonable jury could return a verdict in its favor. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and " 'the motion will not be defeated merely ... on the basis of conjecture or surmise." ' *Trans Sport, Inc. v. Starter Sportswear, Inc.,* 964 F.2d 186, 188 (2d Cir.1992) (citation omitted).

The Second Circuit has summarized the standards for granting summary judgment as follows:

First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions to file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material facts exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving part because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

Fifth, when deciding whether this drastic remedy should be granted in a discrimination case ... [a]

trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue.... Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.

*Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223-24 (2d Cir.1994) (citations omitted). While a pro se plaintiff's papers are entitled to be read liberally, *see Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), even a pro se plaintiff must provide evidentiary support, rather than mere conclusory assertions, to overcome a motion for summary judgment. *See Pell v. Trustees of Columbia Univ.,* No. 97 Civ. 0193(SS), 1998 WL 19989, at \*2 (S.D.N.Y. Jan 21, 1998). "The work of pro se litigants should be generously and liberally construed but [the pro se's] failure to allege either specific facts or particular laws that have been violated, renders his attempt to oppose defendants' motion ineffectual." *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080(PKL) , 1994 WL 681763, at \*5 (S.D.N.Y. Dec.5, 1994).

B. *Plaintiff's Burden of Proof Under Title VII and the ADA*

**\*3** For a claim under either Title VII or ADA, the plaintiff has the initial burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff has established a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the employee's termination, and if the defendant does so, the plaintiff must carry the ultimate burden of persuasion and come forward with evidence establishing intentional discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-512, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ; *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 38 (2d Cir.1994).

C. *Plaintiff's Discrimination Claim Under Title VII*

Plaintiff has failed to establish a prima facie case of discrimination under Title VII, and thus his charges of discrimination under Title VII must be dismissed. In order to establish a prima facie case of discrimination under Title VII, the plaintiff must show that: (1) he was a member of a protected group; (2) his job performance was satisfactory; (3) he was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 179362
**(Cite as: Not Reported in F.Supp.2d)**

discharged; and (4) he was discharged under circumstances giving rise to a reasonable inference of discrimination. *See Chambers,* 43 F.3d at 37. In his complaint, plaintiff alleged discrimination under Title VII (Hanswirth Aff. Ex. A ("Compl.") at 1), but he failed to indicate, in response to question seven, any specific grounds for discrimination under Title VII. (*Id.* at 3.) Furthermore, during his deposition, the plaintiff testified that he did not believe he had been discriminated against in violation of Title VII. (Santiago Dep. at 98-99.)   FN1 Plaintiff testified instead, "My termination was discriminatory in the fact that after I brought to the attention of personnel, a possible fraud ... I was fired without investigating Ms. Suarez, which I have asked Ms. Jean Fuentes to investigate." (*Id.* at 98.) Even if it is true that plaintiff was fired because he brought to light a possible fraud, this is not grounds for an action under Title VII, which makes unlawful certain actions taken on the basis of race, color, religion, sex, or national origin. 42 § 2000e-2 (1994) (defining unlawful employment practices). In light of the evidence presented, no reasonable jury could find that defendant's actions violated Title VII.

> FN1. In light of plaintiff's deposition testimony, it is unnecessary for the Court to grant defendant's motion for summary judgment on the grounds that plaintiff failed to file a Rule 56.1 Statement.

### D. *Plaintiff's Discrimination Claim Under the ADA*

In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was intentionally discriminated against on the basis of disability. *See Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869-70 (2d Cir.1998) ; *Lyons v. Legal Aid Soc'y,* 68 F.3d 1512, 1515 (2d Cir.1995). Discharge on the basis of disability is one type of discriminatory act which may satisfy the fourth element of a plaintiff's prima facie case. 42 U.S.C.A. § 12112(a) (1994) ; *Ryan,* 135 F.3d at 870.

*4 Plaintiff has failed to establish a prima facie case of discrimination under the ADA, and thus this charge in his complaint also must be dismissed. During his deposition, plaintiff testified that he did not believe he was terminated because of his

disability. (Santiago Dep. at 99.) Furthermore, plaintiff stated that his medical condition of high blood pressure was a rare occurrence and not an issue in this case. (*Id.* at 128-29.) Plaintiff also stated, "To me it is not a physical disability." (*Id.* at 130.) He further testified that he never asked anyone at Fox to make an accommodation for him due to his high blood pressure because he was not in need of any such accommodation. (*Id.* at 131-132.) Finally, plaintiff testified at his deposition that he has had no problems with his blood pressure, has not taken medication for his blood pressure, and had not checked his blood pressure in almost half a year. (*Id.* at 172) He stated, in particular, that during the last six months of 1996, the period which covers the entire span of his employment with Fox, his blood pressure was normal. (*Id.*) While a person without a disability may also state a claim under the ADA if he or she is regarded or perceived as having a disability, 29 C.F.R. § 1630.2(g) (1998), there is no evidence that plaintiff was regarded in this way. FN2 Thus, plaintiff has failed to state valid claim under the ADA.

> FN2. During his employment interview, plaintiff did give defendant notice that he had high blood pressure. However, "their response was, that's not an issue. That's not a big deal. In fact, it was not a really big deal." (Santiago Dep. at 130.) Although plaintiff stated that his blood pressure "became a big deal after the opening of the envelope incident. Everything became a big deal" (*id.* at 130), this does not amount to an allegation that he was fired because of his disability. Even if this statement is construed as such an allegation, it is not supported by any facts giving rise to an inference of discrimination on the basis of disability.

### E. *Plaintiff's Claims of Retaliation*

Plaintiff alleges that he was terminated in retaliation for exposing a possible fraud. This claim must be dismissed because plaintiff only brought suit under Title VII and the ADA, and has failed to allege any retaliatory action covered by Title VII or the ADA. Under Title VII, it is unlawful for an employer to discriminate against an employee "because he opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 1999 WL 179362
**(Cite as: Not Reported in F.Supp.2d)**

(1994). Plaintiff has not claimed any retaliation
against him in response to his Title VII claim;
plaintiff only claims that he suffered from retaliation
in response to his report of a possible fraud and his
complaints about Ms. Suarez. (Pl.'s Affirm. at 4; Pl.'s
Notice of Opp. at 2.) Therefore, plaintiff has failed to
establish a claim of retaliation under the Title VII.

For similar reasons, plaintiff has not established a
claim of retaliation under ADA. The ADA states:
"No person shall discriminate against any individual
because such individual has opposed any act or
practice made unlawful by this chapter or because
such individual made a charge, testified, assisted, or
participated in any manner in an investigation,
proceeding, or hearing under this chapter." 42 U.S.C.
§ 12203(a) (1994). Plaintiff has not asserted any
retaliation as a result of his ADA claim, and as a
result, has failed to establish a claim of retaliation
under the ADA. FN3

> FN3. Even if plaintiff had stated in his
> complaint claims for relief under New York
> common law or New York Labor Law §
> 740, such claims would be misplaced and
> subject to summary judgment as well.

## CONCLUSION

**\*5** For the foregoing reasons, defendant's motion for
summary judgment is granted.

IT IS SO ORDERED

S.D.N.Y.,1999.
Santiago v. WNYW TV Network
Not Reported in F.Supp.2d, 1999 WL 179362

Briefs and Other Related Documents (Back to top)

• 1:97cv04771 (Docket) (Jun. 30, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.